IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

THOMAS R. HUDSON,
    Petitioner,

vs.                                           Case No.: 4:05cv215/MMP/EMT

JAMES R. McDONOUGH,[1]
    Respondent.
_____/

**ORDER, REPORT AND RECOMMENDATION**

      This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 1). Respondent filed an answer and relevant portions of the state court record (Doc. 10). Petitioner filed a reply (Doc. 14).

      This matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b). After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.     BACKGROUND AND PROCEDURAL HISTORY

      The procedural background of this case is undisputed by the parties and established by the state court record. On October 14, 1999, following a jury trial in the Circuit Court for Franklin County, Florida, Petitioner was convicted of first degree murder with a firearm, armed robbery with a firearm, burglary of a dwelling with assault, use of a firearm in the commission of a felony, and

---

[1] James R. McDonough succeeded James Crosby as Secretary for the Department of Corrections, and is automatically substituted as Respondent. *See* Fed. R. Civ. P. 25(d)(1).

grand theft of a motor vehicle (Doc. 10, Ex. A at 96–103). Petitioner was sentenced on October 15, 1999 to life in prison on the first-degree murder offense and four concurrent sentences of eleven years and nine months imprisonment on each of the remaining offenses (*id.*, Ex. A at 108–23). Petitioner appealed his conviction and sentence to the First District Court of Appeal of Florida ("First DCA") (*id.*, Ex. C). On December 12, 2000, the appellate court affirmed the conviction and sentence per curiam, but remanded for correction of a portion of the written sentence that did not conform to the trial court's oral pronouncement (*id.*, Ex. F at 1–2). *See* Hudson v. State, 772 So. 2d 614, 614 (Fla. 1st DCA 2000). The First DCA issued its mandate on December 28, 2000 (Doc. 10, Ex. G).

On December 11, 2001, Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure, alleging four ineffective assistance of counsel claims (*id.*, Ex. I at 1–8). On February 2, 2002, Petitioner filed an amended/supplemental 3.850 motion, in which he alleged three additional ineffective assistance of counsel claims and added a claim of newly discovered evidence (*see id.*, Ex. I at 1–8, 11–17). As ground two of Petitioner's original Rule 3.850 motion, Petitioner alleged that trial counsel was ineffective for failing to strike jurors who were known to be prejudiced against Petitioner (*id.*, Ex. I at 5). After a hearing on May 12, 2003, the trial court denied all of Petitioner's claims on March 22, 2004 (*id.*, Ex. I at 61–147, 150–58).

On June 2, 2004, Petitioner appealed the denial of his Rule 3.850 motion to the First DCA (*id.*, Ex. J). Petitioner claimed that the trial court erred in denying his motion for post-conviction relief because he did not receive a full, fair, and adequate hearing (*id.*, Ex. K at 21, 36). On February 25, 2005, the First DCA affirmed the trial court's denial of Petitioner's Rule 3.850 motion (*id.*, Ex. N). *See* Hudson v. State, 906 So. 2d 1063 (Fla. 1st DCA 2005) (Table). Petitioner then filed a "Motion for Rehearing and/or Judicial Clarification and/or Rehearing En Banc" on March 9, 2005 (*id.*, Ex. O). On April 11, 2005, the First DCA denied Petitioner's motion (*id.*, Ex. P). A mandate was issued by the First DCA on April 27, 2005 (*id.*, Ex. Q).

Petitioner filed the instant habeas action on June 16, 2005 (Doc. 1 at 15). Respondent concedes that the petition is timely (Doc. 10 at 5). Respondent also acknowledges that Petitioner has properly exhausted his claims in state court (*id.* at 6).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws of the United States." As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for federal habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub. L. 104-132, § 104, 110 Stat. 1214, 1218–19.

Section 2254 now provides:

> (d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>   (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>   (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (West Supp. 2001).

The United States Supreme Court explained the framework of review under § 2254(d)(1) in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2] The appropriate test in habeas cases was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2)

---

[2]Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99, 120 S. Ct. at 1499–1503, 1511–16); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13, 120 S. Ct. at 1518–23). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Case No.: 4:05cv215/MMP/EMT

> "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13; Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).

The Eleventh Circuit has developed a three-step process for applying the Williams test to any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding. *See* Wellington v. Moore, 314 F.3d 1256, 1260–61 (11th Cir. 2002); Robinson v. Moore, 300 F.3d 1320, 1343–45 (11th Cir. 2002). First, the court must ascertain the controlling legal principles that are clearly established by the Supreme Court at the time of the state court adjudication. Wellington, 314 F.3d at 1260; Robinson, 300 F.3d at 1343. Second, the court must determine whether the state court adjudication was contrary to the clearly established Supreme Court law. Wellington, 314 F.3d at 1260, Robinson, 300 F.3d at 1344. "The 'contrary to' clause in § 2254(d)(1) 'suggests that the state court's decision must be substantially different' from the relevant Supreme Court precedent." Wellington, 314 F.3d at 1260 (quoting Fugate v. Head, 261 F.3d 1206, 1216 (11th Cir. 2001), *cert. denied*, 535 U.S. 1104, 122 S. Ct. 2310, 152 L. Ed. 2d 1065 (2002) (quoting Williams, 529 U.S. at 405)). "Although a state court's decision that 'applies a rule that contradicts' the governing Supreme Court law is 'contrary,' a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law." Wellington, 314 F.3d at 1260 (citing and quoting Williams, 529 U.S. at 404–06). If the state court applied the correct Supreme Court precedent, and the United States Supreme Court, faced with materially indistinguishable facts, has not reached a decision different from the decision reached by the state court in the petitioner's case, the case does not fit within the "contrary to" clause, and the federal habeas court must proceed to the third step and determine whether the state court "unreasonably applied the relevant Supreme Court authority." Fugate, 261

F.3d at 1216. Likewise, if the facts of the Supreme Court cases and the petitioner's case are not substantially similar, "a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law." *Id.* (citing and quoting Williams, 529 U.S. at 406). A state court is not required to cite Supreme Court cases or even be aware of the cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002).

The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 410. The Supreme Court has explained that "a federal habeas court may not issue a writ under the unreasonable application clause 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" Bell v. Cone, 535 U.S. 685, 122 S. Ct. 1843, 1850, 152 L. Ed. 2d 914 (2002) (quoting Williams, 529 U.S. at 411). Indeed, "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 123 S. Ct. 1166, 1175, 155 L. Ed. 2d 144 (2003). A state court's incorrect application of clearly established law will be held to be reasonable and not warrant a writ unless "thorough analysis by a federal court produces a firm conviction that [the state court] judgment is infected by constitutional error." Williams, 529 U.S. at 389. "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations." Yarborough v. Alvarado, 541 U.S. 652, 124 S. Ct. 2140, 2149, 158 L. Ed. 2d 938 (2004) (citation omitted). Although § 2254(d)(1) is concerned only with federal law as clearly established by the Supreme Court, this court may look to circuit precedent to demonstrate reasonable applications of Supreme Court precedent. Van Poyck v. Fla. Dep't of Corrections, 290 F.3d 1318, 1322 n.4 (11th Cir. 2002).

In deciding whether a state court decision involved "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding" under § 2254(d)(2), determinations of fact are "presumed to be correct," unless the presumption is rebutted by Petitioner "by clear and convincing evidence." § 2254(e)(1); *see* Miller-El v. Cockrell, 537 U.S. 322, 123 S.

Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).") (dictum); Fugate, 261 F.3d at 1215 (quoting 28 U.S.C. § 2254(e)(1)); Parker v. Head, 244 F.3d 831, 835–36 (11th Cir. 2001) (citing § 2254(d)(2) and (e)(1)); *see also* Crawford v. Head, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides a "highly deferential standard of review" of the state court's factual determinations). Thus, not only must the state court's factual determination have been unreasonable, but the court's factual findings must be shown unreasonable by clear and convincing evidence. *See* Callahan v. Campbell, 427 F.3d 897, 926 (11th Cir. 2005) (citing § 2254(e)(1); Rutherford v. Crosby, 385 F.3d 1300, 1308 (11th Cir. 2004) ("[Petitioner] has not shown by clear and convincing evidence that the Florida Supreme Court's factual finding . . . [wa]s unreasonable in light of the evidence in the state court record.")).

Within this framework, the court will review Petitioner's claims.

III.   PETITIONER'S CLAIMS

   A.   Ground One: Petitioner Was Denied His Sixth and Fourteenth Amendment Rights to Effective Assistance of Counsel and Due Process of Law

(Doc. 1 at 4).

In Ground One, Petitioner contends that his trial counsel was ineffective for failing to strike jurors who were prejudiced against him (*id.*). During jury selection, Petitioner claims he informed trial counsel that he personally knew two potential jury members and suspected that they were biased against him (*see id.* at 4–5). Petitioner asserts that Juror Don Banta was prejudiced against him due to a bad business deal, and Juror Cecil Pouncy was biased due to his extensive knowledge of Petitioner's criminal history (*id.* at 5). Petitioner alleges that he informed trial counsel of these facts but that counsel did not strike Jurors Banta and Pouncy (*id.*). He alleges that counsel's failure to strike these jurors was a deficient act that fell below the standard of performance of a reasonable criminal defense attorney (*see id.*). He further alleges that had Jurors Banta and Pouncy been struck from the jury, the outcome of the case would have been different — namely: the jury would not have found him guilty (*see id.* at 6). Thus, Petitioner argues that counsel's deficient performance resulted

in a jury verdict that cannot be considered reliable and that violates Petitioner's Fifth, Sixth, and Fourteenth Amendment rights (*see id.*).

Respondent argues that Petitioner's claims are without merit (Doc. 10 at 9). Respondent urges that the state court's order denying post-conviction relief found facts establishing that trial counsel's failure to strike the allegedly biased jurors did not amount to ineffective assistance of counsel (*id.*). Respondent argues that because Petitioner has not established these factual findings to be erroneous by clear and convincing evidence, Petitioner's request for a writ of habeas corpus should be denied (*id.* at 10–11). Further, Respondent argues that the state court's findings are supported by the record and the state court's opinion is not contrary to or an unreasonable application of clearly established Federal law (*id.*). Finally, Respondent argues that even if Petitioner can show that Jurors Banta or Pouncy were biased, Petitioner has presented no evidence showing that, but for trial counsel's failure to strike these jurors, the result of the proceeding would have been different (*id.* at 11).

1. Clearly Established Supreme Court Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To obtain relief under Strickland, a petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. 466 U.S. at 687–88. It is the petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable and that he suffered prejudice as a result thereof. *Id.* at 687. If a petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697.

In determining whether counsel's performance was reasonable, the Court instructed:

Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. *Cf.* Engle v. Isaac, 456 U.S. 107, 133–34, 102 S. Ct. 1558, 1574–75, 71 L. Ed. 2d 783 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent

in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *See* Michel v. Louisiana, *supra*, 350 U.S. at 101, 76 S. Ct. at 164.

Strickland, 466 U.S. at 689.

As to the prejudice prong of the Strickland, the Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" Strickland, 466 U.S. at 693. However, the Court has also clarified that a petitioner need not demonstrate it 'more likely than not, or prove by a preponderance of evidence,' that counsel's errors affected the outcome. Strickland, 466 U.S. at 693–94. Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694. Indeed, it would be "contrary to" the law clearly established in Strickland for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence. Williams v. Taylor, 529 U.S. at 405–06.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. Strickland, 466 U.S. at 694–95. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent

>the errors. . . . [T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.

*Id.* at 695–96.

2. Federal Review of State Court Decision

Petitioner presented this claim to the state court in his Rule 3.850 motion (Doc. 10, Ex. I at 1–8). In its order denying relief, the state court correctly identified the two-prong Strickland standard as applicable to claims of ineffective assistance of counsel (*id.*, Ex. I at 150–51). Therefore, Petitioner is entitled to federal habeas relief only if he demonstrates that the state court decision was based upon an unreasonable application of Strickland.

With regard to counsel's performance, the Eleventh Circuit has stated:

>Trying cases is no exact science. And as a result, we must never delude ourselves that the fair review of a trial lawyer's judgment and performance is an activity that calls for great precision or for a categorical approach. When reviewing whether an attorney is ineffective, courts "should always presume strongly that counsel's performance was reasonable and adequate." Atkins v. Singletary, 965 F. 2d 952, 958 (11th Cir. 1992). And, "a court should be highly deferential to those choices . . . that are arguably dictated by a reasonable trial strategy." Devier v. Zant, 3 F. 3d 1445, 1450 (11th Cir. 1993). Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it can be shown that no reasonable lawyer, in the circumstances, would have done so.

Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994); Grayson v. Thompson, 257 F.3d 1194, 1216 (11th Cir. 2001) (to show counsel's performance was unreasonable, defendant must establish that no competent counsel would have taken the action that his counsel did take); Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (issue is not what is possible, prudent, or appropriate, but what is constitutionally compelled) (citing Burger v. Kemp, 483 U.S. 776, 107 S. Ct. 3114, 3126, 97 L. Ed. 2d 638 (1987)).

In its order denying Petitioner's Rule 3.850 motion, the state court found as fact that Petitioner's defense attorney had worked as a criminal defense attorney since 1985 and had handled thirteen capital trials, including five or six capital trials in the past five years (*see* Doc. 10, Ex. I at 151–52; *see also id.*, Ex. I at 111–12 (transcript of hearing on Rule 3.850 motion)). The state court also found that trial counsel associated with a local attorney during Petitioner's trial because the local attorney was very familiar with the community and the residents of community where the trial

was held (*id.* at 152; *see also id.*, Ex. I at 113, 129). Specifically, the trial court found the local attorney was "especially helpful during jury selection" (*id.*, Ex. I at 152). These findings are consistent with the Rule 3.850 motion hearing transcript. For example, Petitioner's counsel testified:

> Q. . . . If you would have known that a juror had had [sic] a prior business relationship with [Petitioner], in your experience as a defense lawyer handling capital cases, would you have attempted to try and strike that juror?
> A. I wouldn't have attempted. <u>I could have</u>.
> . . .
> And the fact that [local counsel] was back there [(in the court room)], she could have told me — she's represented a lot of these people [(community members)], too, in civil stuff, and she has been a part of this community for many, many years. So I relied heavily on whatever information she may or may not have given me.

(*id.*, Ex. I at 129) (emphasis added).

The trial court also found as fact that Petitioner's attorney, local counsel, an investigator, and Petitioner discussed the prospective jurors during the jury selection process (*id.*, Ex. I at 152). Petitioner's trial counsel testified that he did not recall any specific mention of Juror Banta or Pouncy (*id.*). The state court found that if the "two men were left on the jury, a decision was made to do so, and if a client told [trial counsel] he had a past altercation with a potential juror, that would be grounds for [trial counsel] to seriously consider striking that person from the jury" (*id.*). Again, these findings are supported by the Rule 3.850 motion hearing transcript, as reflected below (*see id.*, Ex. I at 113–16).

> Q. . . . [D]o you recall specifically [Petitioner's] concerns about [] Don Banta?
> A. I know [Petitioner] knew many people on the jury in the panel itself that were sitting out here. I don't remember specific discussions about any individual person.
> Q. Do you recall any specific discussions concerning Cecil Pouncy?
> A. No, sir.
> . . .
> Q. Do you recall how you did the strike process? Did you consult with [Petitioner] before striking any particular juror?
> A. I believe we — I say we, the three of us talked about who was the best. I'm not saying any of them were one better than the other, but like you do on any jury, who you might want to have as opposed to who may be coming up next that you don't want to have.
> Q. And you have no specific recollection of [Petitioner] saying I had a business dealing with this Banta guy, and he is not going to like me?

> A.      No.  I know [Petitioner] had had [sic] dealings with many — maybe not so good dealings with many people, but I don't remember anything specific about these two.  And he could very well have said exactly what he said today.  There obviously was a decision to leave these people on. . . .
>
> Q.      Let me pose  a question to you. . . . [W]ith your experience, if a client tells you look, I sold this guy a truck or a bus and the engine blew up and he doesn't like me, and we had words, would that be grounds normally for you to seriously consider striking that person from the jury?
>
> A.      Yes, or any altercations with them.

(*id.*, Ex. I at 114–16).  Thus, the state court denied Petitioner's Rule 3.850 motion on this ground because Petitioner did not show that counsel's performance was deficient (*id.*, Ex. I at 152).  Specifically, the court noted that the record conclusively refuted Petitioner's claim because it demonstrates "that [trial counsel] would have struck any potential jurors he felt were prejudiced against [Petitioner]" and that if Petitioner "told [trial counsel] something that was enough to make him feel it necessary to strike a juror, [trial counsel] would have done so" (*id.*, Ex. I at 151–52).

The state court's factual findings are presumed correct as Petitioner has failed to rebut these findings with clear and convincing evidence.  In light of the state court record and the Rule 3.850 court's factual findings, this court cannot conclude that the state court's legal conclusion that trial counsel's performance was not so deficient as to constitute ineffective assistance of counsel was an unreasonable application of Supreme Court law.  Accordingly, the state court's denial of this ineffective assistance claim was not unreasonable.

Furthermore, an ineffective assistance claim based on counsel's failure to strike an allegedly biased juror requires a petitioner to show that the juror was actually biased against him.  Miller v. Francis, 269 F.3d 609, 616 (6th Cir. 2001) ("Because [habeas petitioner's] claim of ineffective assistance of counsel is founded upon a claim that counsel failed to strike a biased juror, [the petitioner] must show that the juror was actually biased against him."); Parker v. Turpin, 60 F. Supp. 2d 1332, 1362 (N.D. Ga. 1999) ("[T]o show attorney error and prejudice in defense counsel's failure to use peremptory strikes for [allegedly biased] venire men, it is necessary for Petitioner to show that the venire men did indeed harbor actual bias against Petitioner.").  *See also* Rogers v. McMullen, 673 F.2d 1185, 1189 (11th Cir. 1982) (a defendant's Sixth Amendment right to a fair and impartial jury is not violated unless the defendant can show that a member of the jury which heard his case was biased); Goeders v. Hundley, 59 F.3d 73, 75 (8th Cir. 1995) ("To maintain a claim that a biased

juror prejudiced him, . . . [a habeas petitioner] must show that the juror was actually biased against him." (citing Smith v. Phillips, 455 U.S. 209, 215, 102 S.Ct. 940, 71 L. Ed.2d 78 (1981))); United States v. Winkle, 587 F.2d 705, 714 (5th Cir. 1979) (a defendant has the burden of proving juror partiality or bias and must do so by a preponderance of credible evidence); United States v. Riley, 544 F.2d 237, 242 (5th Cir. 1976).

Petitioner has not presented any evidence tending to show that Juror Banta or Pouncy were actually biased against him. Petitioner's mere allegation of biased jurors does not, in and of itself, demonstrate prejudice by a preponderance of credible evidence. Accordingly, Petitioner is not entitled to relief on this ground.

> B.  Ground Two: Petitioner Was Denied His Fourteenth Amendment Right to Due Process of Law When the Fact Finding Procedure Employed by the State Court was Not Adequate to Afford Petitioner a Full and Fair Hearing

(Doc. 1 at 7).

In Ground Two, Petitioner contends that the state court erred in denying his motion for post-conviction relief (*id.*). Petitioner alleges that he was not afforded a full, fair, and adequate hearing on his motion in violation of his Due Process rights because his Rule 3.850 counsel should have subpoenaed the two allegedly biased jurors or should have presented some evidence other than Petitioner's own testimony at the Rule 3.850 motion hearing (*see id.* at 10, 13). Given counsel's failure, Petitioner argues that he was prevented from presenting witnesses and evidence to support his allegations in violation of his Due Process rights (*id.* at 11). Therefore, Petitioner argues that the state court's factual findings are not entitled to a presumption of correctness (*id.* at 13).

Respondent argues that the factual findings made by the trial court with respect to Ground One of the instant petition are presumptively correct and cannot be disturbed by this court unless Petitioner rebuts the presumption by clear and convincing evidence (*see* Doc. 10 at 12). Additionally, Respondent argues that the state court's decision finding trial counsel not ineffective for failing to challenge jurors that Petitioner alleged were biased was a reasonable application of Strickland (*id.* at 12–13). Finally, regarding Petitioner's Rule 3.850 counsel, Respondent argues that Petitioner is not entitled to relief on this ground (*id.* at 13). Respondent contends that Petitioner's claim is not cognizable in a Federal habeas proceeding because ineffectiveness or incompetence of counsel during state collateral post-conviction proceedings is not a ground for habeas relief (*id.*).

Even if it was a cognizable habeas claim, Respondent urges the court to deny relief because Petitioner's Rule 3.850 counsel was not ineffective (*id.*).

Initially, regarding Petitioner's assertion that the Rule 3.850 court's factual findings are not entitled to a presumption of correctness, the court has already determined that Petitioner has not rebutted the state court's factual findings by clear and convincing evidence. *See supra* at pp. 10–12. Further, Petitioner's Strickland claim was considered and rejected by this court. *See supra* at pp. 6–12.

To the extent Petitioner asserts that the Rule 3.850 court's ruling was erroneous because Petitioner did not have a full, fair, and adequate hearing due to the ineffective assistance of his Rule 3.850 counsel, Respondent is correct that this claim is not cognizable on federal habeas review. It is well established that an alleged defect in a collateral proceeding does not state a basis for habeas relief; rather, habeas relief is available to address only defects in a criminal defendant's conviction and sentence. *See* Quince v. Crosby, 360 F.3d 1260, 1261–62 (11th Cir. 2004) (citing Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987)). Similarly, Petitioner's argument that a writ of habeas corpus should issue because his Rule 3.850 counsel was ineffective is equally meritless. 28 U.S.C. § 2254(i) states "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." *See, e.g.*, Jimenez v. Fla. Dept. of Corr., No. 06-14523, 2007 WL 866226, at *4 (11th Cir. Mar. 23, 2007). Thus, even if Petitioner's Rule 3.850 counsel was ineffective, Petitioner is not entitled to relief.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that James R. McDonough is substituted for James Crosby as Respondent.

And it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

At Pensacola, Florida, this 29th day of March 2007.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988)**.